OPINION *Page 2 
{¶ 1} Defendant-Appellant, Lee Vogelsong, appeals the judgment of the Hancock County Court of Common Pleas overruling his motion to withdraw his guilty plea. On appeal, Vogelsong argues that the trial court erred in denying his motion to withdraw his guilty plea. Finding that the trial court did not abuse its discretion in denying Vogelsong's motion, we affirm the judgment of the trial court.
 {¶ 2} In July 2002, the Hancock County Grand Jury indicted Vogelsong for one count of conspiracy to commit aggravated murder in violation of R.C. 2903.01, a felony of the first degree; one count of obstructing justice in violation of R.C. 2921.32(A)(5), a felony of the third degree; and, one count of intimidation of a witness in violation of R.C.2921.04(B), a felony of the third degree. The State alleged that Vogelsong conspired with Earl Miller, a friend, to detonate pipe bombs at Vogelsong's estranged wife's, Sharon, place of employment in Dayton and to kill her family; that Vogelsong and Miller traveled to Dayton to detonate pipe bombs and shoot the patrons inside Sharon's place of employment, but the plan was thwarted because an unrelated car accident occurred outside her place of employment; and, that Vogelsong rented a car for Miller to drive to Dayton in order to murder Sharon's family, but Miller abandoned the plan. Subsequently, Vogelsong entered a plea of not guilty as to all counts in the indictment.
 {¶ 3} In November 2002, the trial court conducted a change of plea hearing, whereat Vogelsong withdrew his plea of not guilty and entered a negotiated plea of guilty *Page 3 
as to all counts in the indictment. At the hearing, the trial court conducted the following Crim.R. 11 colloquy with Vogelsong:
 THE COURT: Has anybody promised you anything that I am not aware of to induce you to proceed today?
 THE DEFENDANT: No.
 THE COURT: Have any threats been made against you that you have to take this step today?
 THE DEFENDANT: No, sir.
 THE COURT: So you are doing this of your own free will?
 THE DEFENDANT: Yes, I am.
 THE COURT: Are you satisfied with the advice that [your attorney] has provided you?
 THE DEFENDANT: Yes.
 THE COURT: As I understand, he had been preparing for trial and investigating this case for you; is that correct?
 THE DEFENDANT: Yes.
 THE COURT: Have you had the opportunity in your discussion was (sic.) him to review the indictment?
 THE DEFENDANT: Yes.
 THE COURT: Have you had the opportunity to discuss with him your legal rights? THE DEFENDANT: Yes.
 * * *
 THE COURT: There is something called judicial release pursuant to 2929.20 of the Revised Code, by virtue of the imposition of a 9 year prison term, do you understand you would not be eligible to pursue judicial release until you have served five years?
 THE DEFENDANT: Yes, sir.
 THE COURT: Thereafter, you could petition the Court for release. As I understand there is no agreement at this point as it relates to either opposition or support and that would be a matter to be addressed at the time; do you understand that?
 THE DEFENDANT: Yes.
(November 2002 Tr. pp. 13-15, 21-22). At the hearing's conclusion, the trial court permitted Vogelsong to make a statement: "your Honor, all I have to say is that I am *Page 4 
ashamed of what happened. I am certainly sorry for the things that happened and sorry to [Sharon's family]. If I could press rewind I would." (November 2002 Tr. p. 35). Thereafter, the trial court accepted Vogelsong's guilty plea, convicted him, and sentenced him to a nine year prison term on the conspiracy to commit aggravated murder conviction; to a one year prison term on the obstructing justice conviction; and, to a one year prison term on the intimidation of a witness conviction, all to be served concurrently for an aggregate of nine years.[1]
 {¶ 4} In May 2006, Vogelsong moved to withdraw his guilty plea to the conspiracy to commit aggravated murder count, arguing that his November 2002 plea was not voluntary because his attorney erroneously advised him, because his attorney and family unduly influenced him, and because he was innocent.
 {¶ 5} In July 2006, the trial court held a hearing pursuant to Vogelsong's motion to withdraw his guilty plea. At the hearing, the State presented the following evidence: a statement from Vogelsong's sister that pipe bombs were made and a conspiracy did exist; a traffic accident report from May 30, 2002, when the State contended that Vogelsong and Miller traveled to the place of Sharon's employment with the intent of detonating bombs, but abandoned the plan because of a car accident; and, a car rental receipt signed by Vogelsong and a traffic accident report from the vicinity of Sharon's place of *Page 5 
employment, both dated June 19, 2002, which is the same date the State alleged that he rented a vehicle for Miller to travel to Dayton to kill Sharon's family.
 {¶ 6} Conversely, Vogelsong presented a letter purportedly written by Miller, which Vogelsong claimed proves there was no conspiracy between them. The letter stated, in pertinent part, that "I told you man you should have come off with some cash for me and * * * then this dumb shit would not have went down" and was signed "`Boo' Earl". (Defendant's Exhibit B). Vogelsong claimed that the letter proves that he was not in a conspiracy with Miller, but that Miller was extorting money from him. Vogelsong also presented the following testimony from his father, Lester Vogelsong:
 [Vogelsong's Counsel:] [H]ow would you describe the amount of pressure you put on Lee in order to take this [guilty] plea?
 [Lester:] Substantial.
 [Vogelsong's Counsel:] Okay. Could you describe that for the judge?
 [Lester:] Based on [Vogelsong's attorney's] evaluation of where we stood with Earl Miller's testimony and [Vogelsong's sister's], which we felt was going to be against Lee, and they were the only two that was (sic.) really there, [Vogelsong's attorney] felt that he was looking at 20 years, and the plea agreement for 9 was our best interest. And he asked me to try to convince Lee in that favor.
 [Vogelsong's Counsel] And how did you — how were you able to convince Lee? What methods did you use to try and convince Lee?
 [Lester:] Just by telling him what I felt was best from what [his attorney] told me was the best. He was the professional.
(July 2006 Tr. p. 26). Vogelsong claimed that his father's testimony demonstrated that he was unduly influenced to enter his guilty plea.
 {¶ 7} Additionally, Vogelsong argued that he was unable to move to withdraw his guilty plea quicker because his original attorney declined to represent him further and *Page 6 
neither he nor his family had the resources to retain another attorney until 2004. Vogelsong presented several pro se documents he had prepared in effort to withdraw his plea prior to 2004, but had not filed because he decided that he needed an attorney.
 {¶ 8} In October 2006, the trial court overruled Vogelsong's motion to withdraw his guilty plea, finding that his contentions were directly contradicted by the record and that, while his explanation that he could not retain counsel for the three year lapse between the date of sentencing and the filing of his motion had some merit, its decision was not based solely upon the filing delay. Further, the court found that the evidence "[did] not clearly lead the court to a conclusion that the Defendant is innocent." (October 2006 Judgment Entry, p. 4).
 {¶ 9} It is from this judgment that Vogelsong appeals, presenting the following assignment of error for our review.
 THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANTS (SIC.) MOTION TO WITHDRAW HIS GUILTY PLEA.
 {¶ 10} In his sole assignment of error, Vogelsong asserts that the trial court erred in overruling his motion to withdraw his guilty plea. Specifically, Vogelsong argues that his plea was a result of undue influence by his attorney and his family; that he received erroneous legal advice from counsel; and, that the evidence shows that he is innocent. We disagree.
 {¶ 11} Crim.R. 32.1 governs withdrawal of guilty pleas and provides that: *Page 7 
 A motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.
 {¶ 12} Prior to sentencing, courts generally freely permit motions to withdraw guilty pleas. State v. Xie (1992), 62 Ohio St.3d 521, 526. Conversely, a defendant must demonstrate manifest injustice before a post-sentence motion to withdraw a guilty plea will be granted.State v. Smith (1977), 49 Ohio St.2d 261, 264. A manifest injustice is an extraordinary flaw in the plea proceedings, Id. at 264, or a "clear or openly unjust act." State v. Walling, 3d Dist. No. 17-04-12,2005-Ohio-428, at ¶ 6. Therefore, a postsentence withdrawal of a guilty plea is only available in "extraordinary cases." Smith,49 Ohio St.2d at 264.
 {¶ 13} A motion made pursuant to Crim R. 32.1 is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. Smith, 49 Ohio St.2d at paragraph two of the syllabus; State v. Stumpf (1987), 32 Ohio St.3d 95, 104. An abuse of discretion will not be found unless the trial court's determination was unreasonable, arbitrary, or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 14} Here, Vogelsong asserts that his November 2002 guilty plea was not voluntary because his attorney erroneously advised him and failed to inform him about an Alford plea. Specifically, he claimed that his attorney told him that he would do no more than three years in prison if he accepted a nine year sentence. However, a review of the *Page 8 
record indicates that the trial court conducted a thorough Crim.R. 11 colloquy with Vogelsong at the November 2002 change of plea hearing. Particularly, the trial judge advised Vogelsong that he would not be eligible for judicial release until he had served five years of his sentence. Vogelsong stated that he understood this and acknowledged that there was no agreement otherwise. Thus, we find no merit in Vogelsong's assertion that his attorney erroneously advised him or that the plea was not voluntary.
 {¶ 15} Vogelsong also claims that his attorney did not make him aware of an Alford plea, and asserts that he would have entered an Alford plea because he purportedly has maintained his innocence. An Alford plea is made pursuant to a plea bargain when a defendant pleads guilty but at the same time maintains his innocence. State v. Howe, 3d Dist. No. 13-02-01, 2002-Ohio-2713; State v. Vasquez, 10th Dist. No. 05AP-705,2006-Ohio-4074. "Although an Alford plea allows the defendant to maintain his factual innocence, the plea has the same legal effect as a plea of `guilty,' and upon acceptance by the trial court, the defendant stands convicted as though he had been found guilty by a trier of fact."State v. Anderson, 11th Dist. No. 2005-L-178, 2006-Ohio-5167, at ¶ 8, quoting State v. Hughes, 12th Dist. No. CA2002-11-124, 2003-Ohio-3449, at ¶ 9. Here, Vogelsong apologized to his victims at his November 2002 change of plea hearing and said that he was ashamed. This statement of remorse is not consistent with Vogelsong's claims that he has maintained his innocence. Further, an Alford plea has the *Page 9 
same legal effect as a guilty plea. Thus, we fail to see how an Alford plea would have been advantageous to Vogelsong.
 {¶ 16} Vogelsong also asserts that his November 2002 guilty plea was involuntary because his attorney and his family unduly influenced him. Specifically, Vogelsong claimed that his attorney told him that a Findlay jury would find him guilty even if he was innocent on all or some of the charges; that his sister was going to testify against him; that his attorney told him on the day of the plea that if he did not accept this offer, the attorney would not be there for the trial; and, that he felt he could not fire the attorney because his family hired the attorney. Further, Vogelsong claimed that his father assisted his attorney in persuading him to plead guilty. However, a review of the record indicates that Vogelsong clearly stated that no one induced him to proceed; that no one threatened him to enter his guilty plea; and, that he was satisfied with the advice of his attorney. He produced no evidence to the contrary except self-serving statements of his own testimony and his father's testimony.
 {¶ 17} Because the Crim.R. 11 colloquy provides ample evidence of Vogelsong's free will and informed state in entering his guilty plea, we cannot find that the trial court abused its discretion in denying his motion to withdraw his guilty plea on these grounds.
 {¶ 18} Vogelsong also argues that he is innocent because the evidence shows no independent corroboration of a conspiracy and the letter allegedly written by Miller exculpates him from the crime. However, a "defendant's claims of innocence are not *Page 10 
sufficient to warrant withdrawal of a plea knowingly entered." State v.Powers, 4th Dist. No. 03CA21, 2004-Ohio-2720, ¶ 18. Vogelsong offered no evidence of his innocence, other than his own testimony and Miller's letter, which was not authenticated. Additionally, the letter's vague statement that Vogelsong should have "come off with some cash" does not clearly demonstrate a lack of conspiracy between him and Miller and, instead, indicates the opposite. Moreover, the State provided evidence of a conspiracy by the rental car receipt, the traffic accident reports, the statement from Vogelsong's sister, and Vogelsong's own guilty plea. Thus, there is independent proof of conspiracy and Vogelsong's guilt.
 {¶ 19} Based on the foregoing, we cannot find that Vogelsong demonstrated manifest injustice to warrant withdrawal of his guilty plea. Thus, we find that the trial court did not abuse its discretion in denying Vogelsong motion to withdraw his guilty plea.
 {¶ 20} Accordingly, we overrule Vogelsong's assignment of error.
 {¶ 21} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed.
SHAW and WILLAMOWSKI, J.J., concur.
[1] We note that no appeal was taken from the original plea and sentencing. *Page 1