[Cite as *State v. Christie*, 2011-Ohio-520.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY


STATE OF OHIO,                                        CASE NO. 4-10-04

   PLAINTIFF-APPELLEE,

 v.

CHAD CHRISTIE,                                        **O P I N I O N**

   DEFENDANT-APPELLANT.


**Appeal from Defiance County Common Pleas Court**
**Trial Court No. 98 CR 07411**

**Judgment Affirmed**

**Date of Decision:  February 4, 2011**


**APPEARANCES:**

   *Kenneth J. Rexford* **for Appellant**

   *Russell R. Herman* **for Appellee**

**SHAW, J.**

{¶1} The appellant, Chad D. Christie ("Christie"), appeals the January 28, 2010 judgment of the Defiance County Court of Common Pleas finding him guilty of one count of attempted murder with a firearm specification, two counts of kidnapping, and one count of aggravated burglary. Christie was sentenced to twenty-five years in prison for these offenses.

{¶2} In late 1998, Christie and his wife, Anetta, experienced martial difficulties and decided to separate. Anetta and the couples' young child stayed with Anetta's sister, Kim Riblet, and her family during the separation. On November 11, 1998, Christie arrived at Kim's residence armed with a 12-gauge shotgun which he apparently intended to use to commit suicide in front of Anetta. To avoid detection, Christie placed a ladder on the backside of the residence and climbed through a window.

{¶3} Once inside the residence, Christie began searching for his wife when he encountered Kim. Armed with the shotgun, Christie ordered Kim into one of the bedrooms where Anetta was sleeping. Christie then marched Anetta at gunpoint downstairs to the living room where he fired the gun at Anetta's head, removing a significant portion of her ear. Christie then turned the gun on himself

and fired a shot upward through the right side of his jaw. Anetta and Christie's gunshot wounds were not fatal; however, both were permanently disfigured.

{¶4} On December 3, 1998, the Defiance County Grand Jury indicted Christie on the following charges: count one, attempted murder in violation of R.C. 2923.02, a felony of the first degree; counts two and three, kidnapping in violation of R.C. 2905.01(A)(2) and (3), both felonies of the first degree; count four, aggravated burglary in violation of R.C. 2911.11(A)(1) and (2), a felony of the first degree; count five, felonious assault in violation R.C. 2903.11(A)(1) and (2), a felony of the second degree, and count six, domestic violence in violation of R.C. 2919.25(A), a felony of the fifth degree. Each count with the exception of count six, domestic violence, was charged with a firearm specification.

{¶5} On December 10, 1998, Christie appeared for arraignment with counsel and entered pleas of not guilty and not guilty by reason of insanity ("NGRI") to all six counts. Christie's counsel then filed a written request for an evaluation of Christie's competency to stand trial. The trial court accepted Christie's not guilty and NGRI pleas and granted Christie's request for a competency evaluation. The court subsequently ordered psychiatric evaluations regarding both Christie's competency to stand trial and his NGRI plea to be conducted at the Court Diagnostic and Treatment Center. The matter was continued until the evaluations were completed.

{¶6} In early January of 1999, the Court Diagnosis and Treatment Center completed evaluations making the following findings. With regard to Christie's competency to stand trial, the evaluation found that there were no psychiatric or intellectual impediments to Christie's competence to stand trial. The evaluation assessing Christie's NGRI plea concluded that Christie suffered from no signs or symptoms of any mental illness that would have prevented him from understanding right and wrong at the time of the offense.

{¶7} On February 18, 1999, Christie entered a negotiated plea of guilty to the charges of attempted murder with a firearm specification, two counts of kidnapping, and aggravated burglary. Pursuant to the negotiated plea, the prosecution dismissed the charges of felonious assault and domestic violence as well as the remaining firearm specifications listed in the indictment.

{¶8} On March 2, 1999, the trial court sentenced Christie to eight years of imprisonment for the charge of attempted murder, to run consecutively with the mandatory three-year prison term for the firearm specification, and seven years in imprisonment on each charge of kidnapping, with each prison term to run consecutively to the prior charges for a total of twenty-five years. The trial court ordered Christie to serve seven years in prison on the aggravated burglary charge to run concurrently with the twenty-five-year prison term imposed on the other three charges.

{¶9} On November 24, 2004, Christie, pro se, filed a motion for leave to file a delayed appeal with this Court. As the basis for his motion, Christie claimed that he was unable to timely file an appeal of his sentence because he was hospitalized as a result of the self-inflicted gunshot wound which he suffered during the commission of the underlying offenses. This Court subsequently denied Christie's motion for leave to file a delayed appeal.

{¶10} On May 1, 2009, Christie, through retained counsel, filed a "Motion for Sentencing Hearing and Additional Relief." In his motion, Christie argued that the trial court failed to properly inform him of postrelease control and that pursuant to the Supreme Court of Ohio's decision in *State v. Bezak* his sentence was now "void." 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961. Christie further maintained that because his sentence was "void," it was as if he had never been sentenced. Christie asserted that he was now entitled to a *de novo* sentencing hearing in accordance with *Bezak*.

{¶11} The trial court subsequently granted Christie's motion for sentencing. On June 12, 2009, Christie filed a "Motion to Withdraw Plea or Alternatively to Vacate Plea." Christie outlined four grounds to support his claim that the trial court should permit him to withdraw his guilty plea.

{¶12} First, Christie alleged that counts two and three of the indictment, which charged Christie with kidnapping in violation of R.C. 2905.01(A)(2) and

(3), were fatally defective because the counts alleged two separate offenses. Second, Christie argued that his plea was not knowing, voluntary, and intelligent because the trial court gave him improper advice concerning the merger of the offenses at sentencing. Third, Christie maintained that because his sentence was "void," his motion to withdraw his plea was considered a pre-sentence motion and must be "liberally granted" by the trial court. See *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422. Fourth, Christie contended that once the issue of his competency to stand trial was raised, the trial court was mandated by R.C. 2945.37 to conduct a hearing on the issue. Christie asserted that the trial court failed to conduct a formal hearing on the issue of his competency and maintained that the trial court was without jurisdiction to hear his change of plea in February of 1999.

{¶13} On July 7, 2009, the trial court conducted a hearing on Christie's motions for sentencing and withdrawing his guilty plea. On July 10, 2009, the trial court denied Christie's motion to withdraw his guilty plea and imposed the previous sentence of twenty-five years in prison. The trial court also properly informed him of postrelease control and the possible sanctions for violation.

{¶14} On July 20, 2009, Christie filed his notice of appeal from the trial court's July 10, 2009 judgment. This Court subsequently dismissed the appeal because the trial court's July 10, 2009 Judgment Entry contained an error under

*State v. Baker* by failing to include the means of conviction when it imposed Christie's sentence. 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163.

{¶**15**} On January 22, 2010, the trial court held another resentencing hearing and entered a new Judgment Entry on January 28, 2010 correcting the *Baker* error. Christie now appeals from this judgment, asserting the following assignments of error.

### ASSIGNMENT OF ERROR I

**THE TRIAL COURT IMPOSED A SENTENCE OF TWENTY-FIVE YEARS BY RUNNING NON-MINIMUM SENTENCES CONSECUTIVELY PURSUANT TO A SENTENCING LAW THAT WAS UNCONSTITUTIONAL FOR DEPRIVATION OF CHRISTIE'S RIGHT TO TRIAL BY JURY ON THOSE FACTS NECESSARILY FOUND TO SUPPORT THE ENHANCEMENT OF CONSECUTIVE SENTENCING, IN VIOLATION OF BOTH THE OHIO CONSTITUTION AND OF THE UNITED STATES CONSTITUTION.**

### ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED BY DENYING THE PRE-SENTENCING MOTION OF THE ACCUSED TO WITHDRAW HIS PLEA, IN VIOLATION OF THE OHIO RULES OF CRIMINAL PROCEDURE AND OF THE OHIO CONSTITUTION.**

### ASSIGNMENT OF ERROR III

**THE PLEA WAS INEFFECTIVE BECAUSE COUNTS II, III, AND IV ARE FATALLY DEFECTIVE FOR ALLEGING MORE THAN ONE OFFENSE IN A SINGLE COUNT, AS A RESULT OF WHICH THE PLEAS AS TO EACH OF COUNTS II, III, AND IV ARE INEFFECTIVE.**

## ASSIGNMENT OF ERROR IV

**BECAUSE COUNTS II, III, AND IV EACH ALLEGED TWO OFFENSES, OR MORE, AND BECAUSE THE TRIAL COURT DID NOT DISPOSE OF EACH OF THE SEPARATE ALLEGED OFFENSES IN THESE COUNTS, THE RESULTING ENTRY WAS INEFFECTIVE TO ACHIEVE A FINAL, APPEALABLE ORDER.**

## ASSIGNMENT OF ERROR V

**THE PLEA IN THIS CASE WAS NOT KNOWING, VOLUNTARY, AND INTELLIGENT, IN VIOLATION OF THE OHIO CONSTITUTION AND OF THE UNITED STATES CONSTITUTION.**

## ASSIGNMENT OF ERROR VI

**THE PLEA, CONVICTION, AND SENTENCE ARE VOIDABLE AND SHOULD BE DEEMED VOID BECAUSE THE TRIAL COURT FAILED TO CONDUCT A HEARING PURSUANT TO R.C. § 2945.37, AN ERROR THAT IS JURISDICTIONAL.**

## ASSIGNMENT OF ERROR VIII

**THE OHIO STATUTE REGARDING MERGER IS UNCONSTITUTIONAL IN THAT THE DETERMINATION OF FACT NECESSARY TO DECIDE WHETHER MULTIPLE OFFENSES DID OR DID NOT HAVE A SEPARATE ANIMUS IS NOT PRESENTED TO A JURY, IN VIOLATION OF THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION, SUCH THAT IN THIS CASE, AS APPLIED TO THIS DEFENDANT, THE STATE SHOULD BE PRECLUDED FROM ARGUING "SEPARATE ANIMUS" WITHOUT A JURY VERDICT FINDING THAT THOSE FACTS NECESSARY TO ESTABLISH A SEPARATE ANIMUS, OR A STIPULATION ON THAT FACT OR FACTS BY THE ACCUSED WITH PROPER WAIVER OF THAT RIGHT.**

## ASSIGNMENT OF ERROR IX

**MR. CHRISTIE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, IN VIOLATION OF HIS RIGHT THERETO AFFORDED HIM BY BOTH THE OHIO CONSTITUTION AND THE UNITED STATES CONSTITUTION.**

**{¶16}** For ease of discussion, we elect to address some of Christie's assignments of error together and out of the order they were presented.

### *First, Fourth, Seventh, Eighth, and Ninth Assignments of Error*

**{¶17}** At the outset, we observe that Christie's first, fourth, seventh, eighth, and ninth assignments of error each raise issues which are outside the scope of our review on this appeal pursuant to the Supreme Court of Ohio's recent decision in *State v. Fischer*, Slip Opinion No. 2010-Ohio-6238. The Court in *Fischer* held that "[t]he scope of an appeal from a resentencing hearing in which a mandatory term of postrelease control is imposed is limited to issues arising at the resentencing hearing." *Id.* at ¶ 40. Specifically, the Court held that the new sentencing hearing "is limited to the proper imposition of postrelease control." *Id.* at ¶ 29.

**{¶18}** In limiting the scope of appellate review from a postrelease control resentencing hearing, the Court in *Fischer* stated that "res judicata still applies to other aspects of the merits of a conviction, including the determination of guilt and the lawful elements of the ensuing sentence." *Id.* at ¶40. The issues raised by

Christie in his first, fourth, seventh, eighth, and ninth assignments of error should have been addressed in a direct appeal of his sentence imposed in March of 1999. However, Christie failed to timely file an appeal of that sentence. Because these assignments of error address aspects of Christie's case which are barred by res judicata, the arguments pertaining to those assignments of error are now precluded from review. Accordingly, Christie's first, fourth, seventh, eighth, and ninth assignments of error are overruled.

### *Second, Third, Fifth, and Sixth Assignments of Error*

{¶19} Christie's second, third, fifth, and sixth assignments of error are interrelated because they raise issues concerning the merits of Christie's motion to withdraw his guilty plea. For ease of discussion, we elect to proceed by addressing these assignments of error together.

{¶20} In his second assignment of error, Christie argues that the trial court erred when it denied his motion to withdraw his guilty plea. Specifically, Christie argues that because his sentence was considered "void" pursuant to *State v. Bezak*, his motion to withdraw his guilty plea is considered a "pre-sentencing" motion and, therefore, should have been "liberally granted" by the trial court.

{¶21} In addressing this contention, we again turn our discussion to the recently decided *Fischer* case. The Supreme Court clarified the concept of "void judgments" as it relates to postrelease control, and held that "when a judge fails to

impose statutorily mandated postrelease control as part of a defendant's sentence, that *part* of the sentence is void and must be set aside. Neither the Constitution nor common sense commands anything more." *Fischer*, Slip Opinion No. 2010-Ohio-6238, ¶ 26. (Emphasis in original).

{¶22} The Supreme Court modified its holding in *State v. Bezak* and stated that "*only the offending portion* of the sentence (which improperly imposed postrelease control) is subject to review and correction." *Id*. at ¶ 27. (Emphasis added). With respect to the procedure for properly imposing postrelease control, the Supreme Court clarified that "when an appellate court concludes that a sentence imposed by a trial court is in part void, only the portion that is void may be vacated or otherwise amended. Therefore, we hold that the new sentencing hearing to which an offender is entitled under *Bezak* is limited to proper imposition of postrelease control." *Id*. at ¶ 28-29.

{¶23} In applying the principles outlined in *Fischer* to the present case, we conclude that, contrary to Christie's assertion, his entire sentence was not rendered "void" simply because the trial court failed to properly impose postrelease control in the March 2, 1999 Judgment Entry setting forth his sentence. Rather, *Fischer* clearly states that only the "offending portion" of the sentence—the improper imposition of postrelease control—is considered void. Therefore, the *unoffending portion* of Christie's sentence—i.e. the remaining portion of his sentence not

related to the imposition of postrelease control—was properly imposed and became final when it was journalized by the trial court in the March 2, 1999 Judgment Entry of Conviction and Sentence.

{¶24} Consequently, when Christie filed his "Motion to Withdraw Plea or Alternatively to Vacate Plea" on July 12, 2009, it was a "post-sentence" motion because a substantial part of his sentence was final and unaffected by the minor "offending portion" of the sentence relating to postrelease control which was considered "void." In making this distinction in the treatment of Christie's motion to withdraw his plea, we note that a "pre-sentence" motion to withdraw a guilty plea is judged by a court under a more liberal standard and encouraged to be "freely and liberally granted." *State v. Xie* (1992), 62 Ohio St.3d 521, 527, 584 N.E.2d 715. However, in order for a court to grant a "post-sentence" motion to withdraw a guilty plea, the defendant must establish the existence of a manifest injustice, which is a much higher standard. *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324.

{¶25} In reaching our conclusion on this matter we are aware that *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, and its progeny stand for the proposition that when postrelease control was improperly imposed in a sentence, a defendant's motion to withdraw a guilty plea is treated as a "pre-sentence" motion because the entire sentence is considered "void" under *Bezak*.

However, in light of the principles recently announced in *Fischer*, which modifies the ruling *Bezak* by holding that the sentence is only "in part void," we believe that reviewing Christie's motion to withdraw his guilty plea as a "post-sentence" motion is more consistent with the Court's more recent decision on the matter.[1]

{¶26} Having determined that Christie's motion to withdraw his guilty plea is a "post-sentence" motion, we will next address the merits of his motion. Criminal Rule 32.1 governs motions to withdraw guilty pleas, and provides, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1.

{¶27} As previously mentioned, a motion to withdraw a plea filed after a defendant is sentenced will be granted only to correct a manifest injustice with the burden of establishing the existence of a manifest injustice being placed upon the

---

[1] We note that in *Fischer*, the Supreme Court declined to revisit its previous decisions in *State v. Boswell,* 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422 and *State v. Singleton*, 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958. (*Singleton* held that in cases where postrelease control was improperly imposed, the defendants who were sentenced prior to the enactment of R.C. 2929.191 received a de novo sentencing hearing. Those defendants who were sentenced after the enactment of the statute were entitled to a correction of their sentence pursuant to the procedure outlined in R.C. 2929.191(C). The rationale underpinning these cases was that the entire sentence was either "void" or "voidable," depending on when the original sentencing occurred. However, given the holding in *Fischer* that a sentence is only "in part void," as it relates to the postrelease control portion, we believe it is implicit in *Fischer* that Christie's motion to withdraw his guilty plea is to be treated as a "post-sentence" motion.

individual seeking vacation of the plea. Crim.R. 32.1; *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324. A manifest injustice is an exceptional defect in the plea proceedings, *State v. Vogelsong*, 3rd Dist. No. 5-06-60, 2007-Ohio-4935, ¶ 12, or a " 'clear or openly unjust act.' " *State v. Walling*, 3rd Dist. No. 17-04-12, 2005-Ohio-428, ¶ 6, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83, 1998-Ohio-271. "Accordingly, a post-sentence motion to withdraw a guilty plea is only granted in 'extraordinary cases.' " *State v. Driskill*, 3rd Dist. Nos. 10-08-10, 10-08-11, 2009-Ohio-2100, ¶ 32, quoting *Smith*, *supra*. Moreover, an appellate court will not disturb a trial court's denial of a motion to withdraw a guilty plea absent an abuse of discretion. *State v. Nathan* (1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044, citing *State v. Smith, supra*. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶28} Christie's third, fifth, and sixth[2] assignments of error assert individual grounds to support his motion to withdraw his guilty plea. In particular, Christie argues that his plea was ineffective because: 1) the trial court failed to hold a separate hearing to determine his competency; 2) the indictment was

---

[2] We will address Christie's sixth assignment of error insofar as it relates to his motion to withdraw his guilty plea. However, his arguments under this assignment of error which relate to his conviction and sentence should have been raised on a direct appeal and are now considered to be precluded by res judicata pursuant to *Fischer*.

defective because it contained two subsections relating to each offense; 3) the trial court improperly informed him about merger; and 4) the trial court failed to advise him about the possibility of judicial release. We will address each of Christie's contentions in turn.

{¶29} Christie maintains that upon accepting his motion to determine his competency to stand trial and his NGRI plea, the trial court was required to hold a hearing on the matter. Christie now argues that the trial court's failure to conduct a hearing rendered his plea voidable. Generally, a trial court is constitutionally required to hold an evidentiary competency hearing "whenever there are sufficient indicia of incompetency to call into doubt [the] defendant's competency to stand trial." *State v. Were*, 94 Ohio St.3d 173,175, 2002-Ohio-481, 761 N.E.2d 591. However, the failure to hold a hearing may be harmless error where the record fails to reveal sufficient indicia of incompetency. *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016, citing *Drope v. Missouri* (1975), 420 U.S. 162, 180, 95 S.Ct. 896, 908. Moreover, a trial court's finding that a defendant is competent to stand trial must be upheld where there is reliable and credible evidence to support that finding, because deference must be given to the trial court's ability to see and hear what goes on in its courtroom. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶33.

{¶30} After reviewing the record, we find that the record fails to contain sufficient indicia of Christie's incompetence. The record demonstrates that evaluations of Christie's competence to stand trial as well as the validity of his NGRI plea were conducted by the Court Diagnosis and Treatment Center pursuant to the trial court's order. The evaluations unequivocally found that there was no psychiatric or intellectual impediment to Christie's competence to stand trial, and that regarding his NRGI plea, Christie did not suffer from any signs or symptoms of mental illness which would have prevented him from differentiating right from wrong at the time he committed the offenses stated in the indictment. Moreover, neither Christie nor his counsel objected during the plea and sentencing proceedings to the fact that a separate hearing on competency and the NGRI plea was not held. Rather, they both acknowledged that the evaluations were performed and that the findings contained in those reports indicated that Christie was competent to stand trial and that his NGRI plea was not supported by the evidence. (Feb. 18, 1999 Hrg. at p.2; March 2, 1999 Hrg. at p.2-3).

{¶31} Therefore, because the record lacks *any* indicia of Christie's incompetency and fails to substantiate his NGRI plea, we conclude that the trial court's failure to hold a hearing on the matter was harmless error. Therefore, despite his unsupported contention, Christie's plea was not rendered "voidable."

{¶32} Next, Christie argues that counts two, three, and four each alleged more than one offense, and therefore at the time of the plea, he did not know to which offense he ultimately pled. Christie maintains that this rendered his plea ineffective because it was not made knowingly, voluntarily, and intelligently. We initially note that in his motion to withdraw his guilty plea, Christie only raised this argument as to counts two and three, the two kidnapping charges. It is only on appeal that Christie first raises this argument as it relates to count four, the aggravated burglary charge. Nevertheless, we will review Christie's argument on this point as to each count.

{¶33} Count two of the indictment alleged that Christie "did knowingly, by force, threat or deception, remove another from the place where the other person was found or restrain the liberty of the victim, to facilitate the commission of any felony or with the purpose to terrorize, or inflict serious physical harm on the said victim, in violation of [R.C.] 2905.01(A)(2) and (A)(3), Kidnapping, a felony of the first degree[.]" (Indictment, Dec. 3, 1998 p.1).

{¶34} We note that as to count three, our review of the record reveals that even though two subsections of the kidnapping statute are cited, the language contained in count three only correlates to one subsection, specifically R.C 2905.01(A)(3). In particular, count three alleged that Christie, "did knowingly, by force, threat or deception, remove another from the place where the other person

was found or restrain the liberty of the victim, with purpose to terrorize, or inflict serious physical harm on another person, in violation of [R.C.] 2905.01(A)(2) and (3)[.]" (Id. p.1-2).

{¶35} Count four of the indictment alleged that Christie "did, by force, stealth, or deception, trespass in an occupied structure, or in a separately secured or separately occupied portion of an occupied structure, when another person was present, with purpose to commit therein a criminal offense, and the said Chad D. Christie inflicted, or attempted or threatened to inflict physical harm on another person, and/or had a deadly weapon on or about his person or under his control, in violation of [R.C.] 2911.11(A)(1) and (A)(2), Aggravated Burglary, a felony of the first degree[.]" (Id. p.2)

{¶36} Both the Bill of Particulars and the prosecution's recitation of the facts at the change of plea hearing specified the following. Count two pertained to evidence showing that Christie ordered his wife, Anetta, at gunpoint from an upstairs bedroom where she was sleeping to the downstairs living area where he then proceeded to shoot her in the head with a 12-gauge pump shotgun, causing her serious physical harm. Count three pertained to evidence showing that upon entering the downstairs living area of the residence, Christie held a 12-gauge pump shotgun to his wife's sister, Kim Riblet's, head and ordered her at gunpoint to go to the upstairs of the residence to locate his wife in one of the bedrooms.

With respect to count four, the charge was predicated on evidence demonstrating that Christie entered the Riblet residence without permission from the owner or occupants, through a window with a 12-gauge pump shotgun in his possession, which he fired at his wife, causing her serious physical harm.

{¶37} Christie now argues, over ten years later, that his plea was ineffective because counts two, three, and four each listed two subsections of the offense and therefore he did not know to which subsection he was pleading guilty. On appeal, Christie cites no authority mandating that only one subsection of an offense be listed in an indictment, and that the defendant can subsequently only plea to one subsection. To the contrary, the Ohio Criminal Rules of Procedure state that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown *or that the defendant committed it by one or more specified means*. Each count of the indictment or information shall state the numerical designation of the statute that the defendant is alleged to have violated." Crim.R. 7(B). (Emphasis added).

{¶38} Moreover, despite Christie's contention, the record clearly demonstrates that he was fully apprised that he was pleading to two counts of kidnapping and one count of aggravated burglary having committed each offense by two separate means. The trial court also informed Christie that he would receive one prison term for each count, and in fact the trial court only imposed one

sentence for each count; which dispels Christie's argument that he was charged with or improperly sentenced to two different offenses in a single count. Furthermore, at no point during the change of plea hearing did Christie express his confusion about what he was pleading to or object to the charges listed in the indictment.

{¶39} In addition, when the trial court sentenced Christie, it did not impose the maximum prison term on any of the counts even though it fully apprised him of the possibility that he could receive the maximum term on each count upon tendering his guilty plea. The trial court further advised Christie that it was not bound to follow the sentence stated in the plea agreement, in which the prosecution recommended an aggregate twenty-five-year prison term for the charges. Moreover, even though it was within the trial court's authority to order each prison term on all four counts to run consecutively, the trial court ordered the prison term for the aggravated burglary to run concurrent to the sentence for the other three counts.

{¶40} In short, Christie failed to demonstrate that he suffered any prejudice in the sentencing let alone a manifest injustice which would warrant the court to allow him to withdraw his guilty plea on this basis.

{¶41} Christie also argues that the trial court improperly informed him of merger. Specifically, Christie alleges that counts two, three, and four were allied

offenses and should have merged at sentencing. Christie now contends that had he known this information, he would not have tendered his guilty plea. At the outset, we note that Christie simply summarily argues that the two kidnapping and aggravated burglary convictions should have merged because they were allied offenses, and does not separately argue the particular claimed error, nor does he provide any reasons in support his contentions. App.R.16(A)(7). Accordingly, we may disregard this argument pursuant to App.R.12(A)(2). Nevertheless, in light of the recent Supreme Court of Ohio decision in *State v. Johnson*, we do not find that the two counts of kidnapping and the aggravated burglary charge were allied offenses that should have merged at sentencing. *State v. Johnson*, Slip Opinion No. 2010-Ohio-6314 (holding that when determining whether two offenses are allied offenses of similar import subject to merger, the conduct of the accused under the facts of the particular case must be considered).

{¶42} As previously mentioned, Christie committed one act of aggravated burglary when he stealthily crawled through the back window of his sister-in-law's residence with a 12-gauge shotgun loaded with deer slugs. After entering the residence, he kidnapped two different victims. In the first instance, he ordered his sister-in-law upstairs at gunpoint to find his wife. Once he located his wife, he marched his wife downstairs at gunpoint, where he then shot her. Based on these facts, we do not find that counts two, three, and four were allied offenses and

subject to merger. Moreover, because Christie fails to cite any authority to support his contention that they should have been merged, we decline to further develop his argument for him.

{¶43} As the last remaining ground to support his motion to withdraw his guilty plea, Christie argues that the trial court erred when it informed him that he was not eligible for community control. At the change of plea hearing, the trial court described the possible prison terms for each count and properly informed Christie of postrelease control and the sanctions for violating postrelease control. The trial court also explained to Christie that the firearm specification attached to the attempted murder charge carried with it a mandatory three-year prison term. Accordingly, Christie was advised that if he chose to enter a guilty plea pursuant the negotiated agreement, he would be required to serve prison time.

{¶44} Specifically, Christie maintains that the trial court failed to inform him of the possibility of community control "by way of judicial release." (Appt. Brief p.15). Again, Christie fails to cite any authority which requires a trial court to inform the defendant of the possibility of judicial release. In fact, there is nothing in Crim.R. 11 which requires a trial court to advise the defendant of all the possible scenarios—i.e. that judicial release could "in theory" be imposed, prior to accepting the defendant's guilty plea. Moreover, because Christie was sentenced to a prison term of twenty-five years he is not an "eligible offender" under the

judicial release statute which limits the availability of judicial release to offenders who are serving a prison term of ten years or less. See R.C. 2929.20(A). Accordingly, Christie has failed to demonstrate that the trial court's failure to advise him of an attenuated possibility that judicial release could be granted in the future resulted in a manifest injustice.

{¶45} After reviewing the record before us, we conclude that Christie failed to establish the existence of a manifest injustice on any of the grounds alleged. Accordingly, the trial court did not abuse its discretion in denying Christie's motion to withdraw his guilty plea. Christie's second, third, fifth, and sixth assignments of error are, therefore, overruled.

{¶46} For all these reasons, the judgment of the Defiance County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs**

**Rogers, P.J., Concurring Separately**

{¶47} I concur with the result reached by the majority. However, as to the second, third, fifth, and sixth assignments of error, all of which address the trial court's denial of his motion to withdraw his plea, I would not discuss the merits of such motion.

{¶48} First, the trial court has no authority to even consider a motion to withdraw a plea after an original appeal, or, if no appeal is taken, after the time for filing the original appeal has passed. *State v. Coats*, 3d Dist. Nos. 10-10-05, 10-10-06, 2010-Ohio-4822, ¶18, citing *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, ¶61. Second, even if the trial court had authority to consider the motion, a decision that could have been appealed to this Court, but was not, is res judicata. Id. at ¶16.

{¶49} Therefore, I would have overruled the second, third, fifth, and sixth assignments of error without discussion as to the background or merits of Appellant's motion.

**/jnc**