[Cite as *State v. Schmidt*, 2010-Ohio-4809.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### MERCER COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO. 10-10-04

    v.

PHILLIP SCHMIDT,                        **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 09-CRM-064

**Judgment Affirmed**

Date of Decision: October 4, 2010

APPEARANCES:

    *Gerald F. Siesel* **for Appellant**

    *Matthew K. Fox* **for Appellee**

**WILLAMOWSKI, P.J.,**

{¶1} Defendant-Appellant, Phillip Schmidt ("Schmidt"), appeals the judgment of the Mercer County Court of Common Pleas finding him guilty of reckless homicide and two related drug offenses. On appeal, Schmidt claims that the trial court erred when it denied his pre-sentencing motion to withdraw his *Alford* guilty plea and that he was denied effective assistance of counsel. For the reasons set forth below, the judgment is affirmed.

{¶2} On the evening of June 9, 2009, Brett Riley ("Mr. Riley") and his wife, Michelle Riley ("Mrs. Riley"), decided that they wanted to purchase Fentanyl drug patches for recreational drug use at their residence in Celina, Ohio. Mr. Riley told the police that he had purchased Fentanyl from Schmidt in the past and he called Schmidt again to arrange a purchase. Mr. Riley met Schmidt, paid $56 for the patch, and returned home to ingest the Fentanyl patch with his wife.

{¶3} Fentanyl is a Schedule II controlled prescription drug that is a powerful synthetic opiate many times stronger than morphine. A Fentanyl patch is designed to be applied to the skin and used for 48 to 72 hours for timed-release dispensing of the drug in order to manage pain. Drug abusers will cut up and chew on the patch in order to ingest the drug and experience a high.

{¶4} The Rileys' children found their parents passed out and were unable to awaken them, so they called 9-1-1. The police and EMS squads arrived and

found that Mrs. Riley was completely unresponsive without a pulse, heartbeat or blood pressure; she was deceased. Mr. Riley was very near death, but they were able to resuscitate him and transport him to the hospital. His condition eventually improved and he survived. The cause of death for Mrs. Riley was determined to be Fentanyl and alcohol intoxication.

{¶5} On July 16, 2009, the Mercer County Grand Jury returned a thirteen-count indictment against Schmidt, charging him with multiple counts of Involuntary Manslaughter, Reckless Homicide, Corrupting Another with Drugs, Trafficking in a Schedule II Controlled Substance (Fentanyl), and Possession of Drugs. In all, he was charged with five first degree felonies, six third degree felonies, and two fifth degree felonies, carrying an aggregate penalty of approximately 89 years of imprisonment. (Dec. 23, 2009, Sentencing Hearing Tr., pp. 29-31.) Due to the fact that several of the counts were allied offenses and potentially subject to merger at sentencing, the total maximum prison time for all of the offenses was thought to be approximately 26 to 36 years. (Id. at p. 31.)

{¶6} Counsel was appointed for Schmidt[1] and he entered pleas of not guilty to all thirteen counts in the indictment. Plea negotiations remained on-

---

[1] Schmidt's original appointed counsel withdrew because of a conflict. Another counsel was appointed, and then Schmidt requested co-counsel, so Schmidt was represented by two attorneys throughout the proceedings. The day before his scheduled trial, Schmidt requested new counsel, but this request was denied. Schmidt also requested new counsel after he asked to withdraw his guilty plea, but discussions with the trial court indicated that this request would not be granted.

going in the weeks and days leading up to trial. The trial was originally scheduled for October 6, 2009, but was rescheduled for 9:00 a.m. on December 8, 2009.

{¶7} On the morning of the trial, while a prospective jury panel was awaiting voir dire, the State offered to allow Schmidt to enter an *Alford* guilty plea to three of the counts: Count 5 – Reckless Homicide, in violation of R.C. 2903.41, a third degree felony; an amended Count 9 – Corrupting Another with Drugs, in violation of R.C. 2925.02(A)(3);(c)(1), a second degree felony (which was reduced from a first degree felony by deleting reference to the offence occurring within 1,000 feet of a school); and Count 10 – Trafficking in Drugs, in violation of R.C. 2925.03(A)(1);(C)(1)(b), a third degree felony. This negotiated plea agreement reduced the potential maximum prison time down to no more than 18 years. The State also agreed to forgo filing a community control violation arising from Schmidt's previous felony weapons conviction. Schmidt continued to dispute the acts that were attributed to him but agreed to enter an *Alford* guilty plea in order to avoid the risks of proceeding to trial.

{¶8} The trial court then held a change of plea hearing and accepted Schmidt's *Alford* plea of guilty to the reduced charges. The trial court questioned Schmidt extensively to verify that he had had an opportunity to discuss the plea with his attorneys and to be certain that he understood what an *Alford* plea meant. Schmidt answered in the affirmative and the trial court stated:

> **The court's understanding is that an *Alford* Plea is a complete admission of a guilty plea, but you do not admit the operative facts of the offenses and continue to maintain your actual innocence of the charges. The guilty plea is based upon a substantial certainty of a far greater penalty and finding by the jury in this case than would occur by which the State is willing to allow you to plead to these three offenses. Is that your understanding?**

(Dec. 8, 2009 Hearing Tr., p. 5.) Schmidt again answered in the affirmative, and indicated that he did not have any questions about the procedure. The State outlined its case against Schmidt and summarized all of the evidence that it had been prepared to present. The trial court continued with the Criminal Rule 11 colloquy and then found Schmidt guilty of the three counts and approved the nolle prosequi of the remaining counts. Sentencing was scheduled for December 23, 2009. Schmidt also signed a written negotiated plea agreement and a waiver of constitutional rights prior to entering a plea.

{¶9} Two days prior to the sentencing hearing, Schmidt filed a motion to withdraw his *Alford* plea. He claimed that "given the undue influence exerted on me by my own attorney's [sic] and [the prosecutor] on a quick decision, I signed the plea bargain against my better judgment and wishes." Schmidt contended that his legal counsel had misled him and exerted undue pressure on him to agree to the plea in the context of the immediacy of the trial waiting to go forward on the morning of December 8th.

{¶10} On December 23, 2009, the trial court conducted a full hearing on Schmidt's motion to withdraw his plea. After hearing Schmidt's testimony and professional statements from his attorney and the prosecutor, the trial court denied his motion to withdraw the plea, finding that "evidence would support that it is simply a change of heart on the part of the defendant after the fact." (Dec. 23, 2009, Sentencing Hearing Tr., p. 33.) The trial court further stated that "there is reason to believe that the defendant's motion is simply an effort to delay the inevitable." (Id. at p. 34.)

{¶11} The trial court sentenced Schmidt to five years in prison on each of Counts 5 and 10, and three years on Count 9, with the sentences to be served consecutively for a total of thirteen years in prison. It is from this judgment that Schmidt now appeals, raising the following three assignments of error.

## First Assignment of Error

**The trial court erred in not allowing [Schmidt] to withdraw his Alford guilty plea prior to sentencing and thereby violated [Schmidt's] constitutional right to due process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

## Second Assignment of Error

**The trial Court abused its discretion by denying [Schmidt's] pre-sentence motion to withdraw his Alford guilty plea, pursuant to Ohio Criminal Rule 32.1.**

## Third Assignment of Error

**[Schmidt] was denied effective assistance of counsel when trial counsel failed to recuse themselves after it became evident counsel were potential witnesses in [Schmidt's] motion to withdraw his Alford plea, and because trial counsel failed to present sufficient evidence at [Schmidt's] hearing to withdraw his Alford plea of guilty.**

{¶12} In his first assignment of error, Schmidt maintains that he should have been permitted to withdraw his guilty plea because the trial court violated his constitutional rights when it failed to follow requisite procedures before accepting his *Alford* guilty plea. Specifically, Schmidt claims that: there was no meaningful dialogue by the Court with Schmidt; there was no statement summarizing the defense counsel's separate investigation; and, there was no sworn statement of evidence presented by the State.

{¶13} An "*Alford* plea" is a specialized type of guilty plea where the defendant, although pleading guilty, continues to deny his or her guilt but enters the plea because the defendant believes that the offered sentence is better than what the outcome of a trial is likely to be. *State v. Howe*, 3d Dist. No. 13-02-01, 2002-Ohio-2713. The term "*Alford* plea" originated with the United States Supreme Court's decision in *North Carolina v. Alford* (1971), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, wherein the Supreme Court held that guilty pleas linked with claims of innocence may be accepted provided the "defendant intelligently concludes that his interests require entry of a guilty plea and the

record before the judge contains strong evidence of actual guilt." Id., 400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171. "An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. An *Alford* plea has the same legal effect as a guilty plea. *State v. Vogelsong*, 3d Dist. No. 5-06-60, 2007-Ohio-4935, ¶15.

{¶14} All pleas, including an *Alford* plea, must meet the general requirement that the defendant knowingly, voluntarily, and intelligently waived his right to trial. See, e.g., *State v. Padgett* (1990), 67 Ohio App.3d 332, 337-38, 586 N.E. 2d 1194, construing Crim.R. 11(C). Because pleas accompanied by protestations of innocence give rise to an inherent suspicion that a knowing, voluntary, and intelligent waiver may not have occurred, an *Alford* plea places a heightened duty upon the trial court to ensure that the defendant's rights are protected and that entering the plea is a rational decision on the part of the defendant. Id.; *State v. Jackson*, 3d Dist. No. 9-99-50, 2000-Ohio-1700 (Shaw, J., concurring in judgment only.) "In accepting an Alford plea, absent the presentation of some basic facts surrounding the charge, there can be no determination that the accused made an intelligent and voluntary guilty plea, because the absence of a basic factual framework precludes a trial judge from evaluating the reasonableness of the defendant's decision to plead guilty

notwithstanding the protestation of innocence." *State v. Hayes* (1995), 101 Ohio App.3d 73, 75, 654 N.E.2d 1348, 1350.

{¶15} The Ohio Supreme Court has held that a court may find that an *Alford* guilty plea has been voluntarily and intelligently made where the record affirmatively discloses that "(1) defendant's guilty plea was not the result of coercion, deception or intimidation; (2) counsel was present at the time of the plea; (3) counsel's advice was competent in light of the circumstances surrounding the indictment; (4) the plea was made with the understanding of the nature of the charges; and, (5) defendant was motivated either by a desire to seek a lesser penalty or a fear of the consequences of a jury trial, or both." *State v. Piacella* (1971), 27 Ohio St.2d 92, 271 N.E.2d 852, at the syllabus. This Court has also recognized a heightened duty associated with the acceptance of an *Alford* plea.

> **In order for the trial court to establish that an *Alford* plea is knowing, voluntary, and intelligent, the court must conduct what is commonly referred to as an "*Alford* inquiry." An "*Alford* inquiry" requires that the trial court question the defendant concerning the reasons for deciding to plead guilty, notwithstanding the protestations of innocence. The record also must contain strong evidence of guilt before an *Alford* plea may be accepted. Therefore, the plea should not be made without the presentation of some basic facts surrounding the offenses charged**. (Citations omitted.)

*State v. Scott*, 3d Dist. No. 13-2000-34, 2001-Ohio-2098.

{¶16} In this case, the trial court conducted a thorough hearing and addressed Schmidt at length about his *Alford* plea, his understanding of the plea,

and his understanding of the rights he was waiving. Prior to the acceptance of Schmidt's guilty plea, the trial court asked Schmidt over twenty-four questions concerning his understanding of his *Alford* plea and whether he was voluntarily changing the plea of his own free will, and another dozen questions concerning his understanding of the ramifications of the plea and the potential sentences and consequences that he would be facing as a result. Schmidt answered in the affirmative to every one of the trial court's inquiries, including the following:

> **The Court: Mr. Schmidt, this is what we call an *Alford* plea. Have you had time to discuss the import of this type of plea with your attorneys this morning?**
>
> **Schmidt:     Yes, sir.**
> ***
> **The Court: Have you read the negotiated plea agreement and waiver of rights form that was presented to you this morning?**
>
> **Schmidt:     Yes, sir.**
>
> **The Court: Do you think you understand everything in those forms?**
>
> **Schmidt:     Yes, sir.**
>
> **The Court:  Have you had ample opportunity to discuss these forms and the facts therein with your attorneys here this morning?**
>
> **Schmidt:     Yes, sir.**
> ***
> **The Court: Are you satisfied with the service and advice of your attorneys up to the present time?**
>
> **Schmidt:     Yes, sir.**

> **The Court: Do you understand that no one can compel you to enter this plea?**
>
> **Schmidt: Yes, sir.**
>
> **The Court: Are you changing this plea freely and voluntarily?**
>
> **Schmidt: Yes, sir.**

(Dec. 8, 2009, Change of Plea Hearing Tr., pp. 4-5, 8, and 21.) Although Schmidt did not personally state his specific reasons for the *Alford* plea in his own words, he concurred with the trial court's statement of its understanding of his reasoning. (See ¶8 above.) Schmidt's attorney also spoke on Schmidt's behalf. See *State v. Harvey*, 3d Dist. No. 1-09-48, 2010-Ohio-1627, ¶10 (stating that "[w]hen an accused is present in the court; when the record shows clearly that he knew and understood what was being done; and when it is clear that he acquiesced in a guilty plea entered for him by his attorney; then the plea has the exact same force and effect as though he had personally spoken the words of the attorney.") His attorney stated:

> **Mr. Schmidt has made it abundantly clear, I think, throughout this that by his *Alford* plea that he does dispute the acts that are attributed to him; but in terms of entering his plea of guilty, he does so because of the risk of proceeding to trial.**

(Dec. 8, 2009, Change of Plea Hearing Tr., pp. 27-28.)

{¶17} The trial court complied with all of the Crim.R. 11 plea acceptance requirements and also conducted an enhanced "*Alford* inquiry." Based on the

above, it is clear that the record discloses that Schmidt's plea met all of the factors outlined in *State v. Piacella* that would enable a trial court to find that an *Alford* guilty plea has been voluntarily and intelligently made. There is no merit to Schmidt's contention that the trial court did not conduct a "meaningful dialogue" with Schmidt.

{¶18} Furthermore, we do not find, nor does Schmidt provide, any legal support for his complaints that his constitutional rights require that there must be a statement summarizing the defense counsel's separate investigation and a sworn statement of evidence presented by the State.[2] While this Court has held that the record should contain strong evidence of guilt before an *Alford* plea is accepted and it should contain "the presentation of some basic facts surrounding the offenses charged," there are no requirements such as those suggested by Schmidt. See *State v. Scott*, supra, citing *State v. Nicely*, 6th Dist. No. F-99-014, 2000 WL 864448. See, also, *State v. Howe*, supra, at ¶23, fn.1.

{¶19} At the change of plea hearing, the State made a professional statement outlining the case it was prepared to present against Schmidt, including the many witnesses it planned to call, a summary of their proposed testimony, and a review of the physical evidence that it had. The State represented that Mr. Riley

---

[2] Although this did occur in the original *North Carolina v. Alford* case, that type of evidentiary presentation is not a requirement for accepting an *Alford* plea. Furthermore, in the federal courts, Fed.R.Crim.P. 11 expressly provides that a court "shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." Ohio's Crim.R. 11 does not contain that language.

would testify that for some period of time prior to June 9, 2009, he had purchased Fentanyl patches from Schmidt; that Schmidt was a regular dealer of drugs for the Rileys; and that Schmidt had sold Mr. Riley a Fentanyl patch on the evening of June 9, 2009. In addition to the testimony of Mr. Riley, EMS responders, doctors, and a toxicologist, the State was prepared to submit surveillance video tapes and telephone records linking Schmidt with Mr. Riley that evening, along with literature found in Schmidt's apartment delineating the nature and potency of Fentanyl, as well as its potential dangers.

{¶20} Notwithstanding Schmidt's protestations of innocence, the State was prepared to present considerable evidence of his guilt. We find that the trial court had before it sufficient basic facts to allow the trial judge to ascertain that Schmidt had made a rational calculation that it was in his best interest to accept the plea bargain offered by the State. There was no indication that any of Schmidt's constitutional rights to due process were violated. Based on all of the above, Schmidt's first assignment of error is overruled.

{¶21} In his second assignment of error, Schmidt asserts that he should have been permitted to withdraw his presentence plea pursuant to Crim.R. 32.1 because Ohio courts have held that a presentence motion to withdraw a guilty plea should be freely and liberally granted. See, e.g., *State v. Peterseim* (1980), 68 Ohio App.2d 211, 213-214, 428 N.E.2d 863. Schmidt claims that there existed

cogent reasons for allowing the withdrawal of his guilty plea in this case, namely that he believed he was under considerable duress and was coerced into making the plea; that he had requested the termination of his legal counsel because they unduly influenced him into entering the plea; and that he did not understand the charge and possible penalties in the case.

{¶22} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty * * * may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Generally, a motion to withdraw a guilty plea that is filed prior to sentencing will be freely allowed. *State v. Drake* (1991), 73 Ohio App.3d 640, 598 N.E.2d 115; *State v. Thomas*, 3d Dist. No. 1-08-36, 2008-Ohio-6067, ¶6.

{¶23} However, this does not mean that a motion to withdraw a guilty plea will be granted automatically. *Drake*, at 645. "A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie* (1992), 62 Ohio St.3d 521, 584 N.E.2d 715, at paragraph one of the syllabus. It is within the trial court's sound discretion to determine whether there is a legitimate and reasonable basis for the withdrawal of a guilty plea and, absent an abuse of discretion, the trial court's

decision on the matter must be affirmed. Id. at 527. An abuse of discretion is more than an error of judgment; it implies that the decision was "unreasonable, arbitrary, or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

**{¶24}** Appellate courts often consider the following factors when reviewing a trial court's decision concerning a pre-sentence motion to withdraw a guilty plea:

> **1) whether the State will be prejudiced by withdrawal; 2) the representation afforded to the defendant by counsel; 3) the extent of the Crim.R.11 plea hearing; 4) the extent of the hearing on the motion to withdraw; 5) whether the trial court gave full and fair consideration to the motion; 6) whether the timing of the motion was reasonable; 7) the reasons for the motion; 8) whether the defendant understood the nature of the charges and potential sentences; and 9) whether the accused was perhaps not guilty or had a complete defense to the charge.**

*State v. Leffler*, 3d Dist. No. 6-07-22, 2008-Ohio-3057, ¶11; *State v. Lewis,* 3d Dist. No. 1-02-10, 2002-Ohio-3950, ¶11; *State v. Fish* (1995), 104 Ohio App.3d 236, 240, 661 N.E.2d 788, 790.

**{¶25}** An examination of the above factors, first enumerated in *State v. Fish*, supra, does not weigh in Schmidt's favor. He had a full change of plea hearing and a hearing on the motion to withdraw the plea. Schmidt was represented by competent counsel at both the change of plea hearing and the plea withdrawal hearings. He filed the motion only two days prior to the final date of

sentencing. The record of the plea hearing indicates that Schmidt was completely aware of the charges and potential sentences he faced when he entered the plea. The trial court gave careful consideration to the motion. Although Schmidt maintained his innocence, the record is devoid of any defenses he may have had and the prosecutor's overview of the case demonstrated that the State was prepared to present compelling evidence of Schmidt's guilt. Furthermore, Schmidt's reasons for withdrawing his plea were not persuasive.

{¶26} In his letter in support of the motion to withdraw his guilty plea, Schmidt claimed he was under a great deal of pressure and "badgering" from his attorneys and the prosecutor, and that he "was not aware from any source that I was about to be given only fifteen minutes to make a decision that would affect me for the rest of my life." However, the record before the trial court and Schmidt's own testimony strongly refutes Schmidt's allegations.

{¶27} At the hearing, Schmidt had the opportunity to testify at length as to his reasons for wanting to withdraw his plea. His attorney and the prosecutor also gave professional statements. Schmidt acknowledged that the answers he had given to the trial court on the day of his change of plea hearing were truthful, "I thought they were truthful from my heart, yes sir." (Dec. 23, 2009. Hearing Tr., p. 25.)

{¶28} Although Schmidt originally claimed he had only "fifteen minutes" to make up his mind, the evidence demonstrated that plea negotiations had been ongoing for months; that the final plea offer that was made on the day of trial was substantially similar to an offer he had received weeks before (except that for the fact that the plea would be an "*Alford* plea"); that he actually had approximately three hours to consider the offer that day; and that his family was brought in to discuss the matter with him. Furthermore, when Schmidt indicated he was reluctant to sign the plea agreement, his attorneys, the State, and the trial court were all prepared and willing to proceed with the trial. It appears that Schmidt claims he felt he was "badgered" when he was informed that if he did not want to sign the plea agreement, then they would go forward with the trial in fifteen minutes, since the jury had been waiting all morning. A trial by jury is a right; it does not constitute a threat or a manner of "duress." Furthermore, his attorneys' assessment as to his likelihood of prevailing at trial does not constitute "coercion."

{¶29} While Schmidt was undoubtedly under stress at the time that he entered his plea, it is certainly not unusual for a criminal defendant to be under a great deal of stress when entering a plea to criminal charges. See *Leffler*, 2008-Ohio-3057, at ¶19. Schmidt's testimony at the plea withdrawal hearing again confirmed that he had understood the plea agreement and the ramifications of

making an *Alford* plea. (Dec. 23, 2009 Hearing Tr. pp. 10-12.) Schmidt's claim that his plea was the result of duress and coercion is not supported by the record.

{¶30} In his pro-se letter accompanying the motion to withdraw, Schmidt also claimed that he was under the mistaken impression that he could potentially face up to a maximum of 89 years in prison if he did not accept the plea. However, Schmidt himself did not raise this issue at the hearing and there was no testimony or evidence in the record that he was ever told he could be subject to 89 years in prison.[3] In any case, Schmidt, age 60, gained a considerable reduction in the maximum prison time by entering an *Alford* plea. Instead of a potential prison sentence of 26-36 years (plus additional penalties for violating community control), Schmidt's plea reduced the maximum prison time to 18 years, and he was actually sentenced to 13 years in prison.

{¶31} The record does not reflect that Schmidt was subject to any undue coercion or duress, and there is no evidence that he did not understand his plea and the maximum potential penalties associated with accepting the plea agreement. It is well-settled that a mere "change of heart" is insufficient grounds for allowing the withdrawal of a guilty plea*." State v. Ramsey*, 3d Dist. No. 1-06-2001, 2006-Ohio-2795, ¶11, citing *State v. Drake*, 73 Ohio App.3d at 645. Therefore, we do

---

[3] Although Schmidt did not raise the issue, the trial court did. Schmidt's attorneys and the prosecutor denied ever representing to Schmidt that he could be subject to 89 years in prison.

not find that the trial court abused its discretion in denying Schmidt's motion to withdraw his guilty plea. The second assignment of error is overruled.

**{¶32}** In his final assignment of error, Schmidt asserts that he was denied effective assistance of counsel because of a conflict of interest with his attorneys concerning the withdrawal of his guilty plea. Schmidt claimed that his attorneys "coerced" him into accepting the State's plea offer, thereby making it difficult for them to represent Schmidt at the hearing on his motion to withdraw his plea.

**{¶33}** Although Schmidt states that trial counsel failed to "recuse" themselves, the record shows that they were cognizant of the potential conflict and requested permission from the trial court to withdraw. The trial court did not permit them to withdraw, so it would appear that Schmidt is claiming that the trial court's denial of their request to withdraw resulted in Schmidt being afforded ineffective assistance of counsel.

**{¶34}** Schmidt must satisfy the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, to prove ineffective assistance of counsel. *State v. Xie*, 62 Ohio St.3d at 524. The *Strickland* test was applied to guilty pleas in *Hill v. Lockhart* (1985), 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203." Id. *Strickland* requires a defendant to show that "(1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense." *State v. Brooks*, 3d Dist. No. 4-08-

09, 2008-Ohio-6188, ¶16; *State v. Kole*, 92 Ohio St.3d 303, 306, 2001-Ohio-191, 750 N.E.2d 148, quoting *Strickland*, at 687. To establish prejudice when ineffective assistance of counsel relates to a guilty plea, a defendant must show there is a reasonable probability that but for counsel's deficient or unreasonable performance, he/she would not have pled guilty. *Xie*, 62 Ohio St.3d at 524, citing *Hill v. Lockhart*, 474 U.S. at 59, 106 S.Ct. 366, 88 L.E.2d 203. The decision not to remove court-appointed counsel is reviewed under an abuse of discretion standard. *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765.

{¶35} The facts of this case fail to show that counsel's performance fell below an objective standard of reasonableness. In fact, the record shows that Schmidt's attorneys advocated diligently on his behalf. Counsel has a critical obligation to advise a client of the advantages and disadvantages of a plea agreement. *Padilla v. Kentucky* (2010), -- U.S. --, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284. To obtain relief on a claim that an attorney provided ineffective assistance by failing to properly advise a defendant on the consequences of a guilty plea, a defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances. Id.

{¶36} Schmidt's attorneys believed that his best interests would be served by accepting the plea agreement. Apparently that is not the advice that Schmidt

wanted to hear and he claimed that he felt pressured and coerced into accepting the plea agreement. However, "[a] lawyer has a duty to give the accused an honest appraisal of his case. *** Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism. If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice." *State v. Congrove*, 5th Dist. No. 09 CAA09 0080, 2010-Ohio-2933, ¶36 (internal quotation marks and citations omitted). Based on the overwhelming evidence against Schmidt and the fact that the plea agreement represented a significant reduction in the potential sentences he was facing, we cannot say that Schmidt's attorneys acted unreasonably. Cf. *State v. Brown*, 2nd Dist. No. 2002-CA-23, 2003-Ohio-2959, ¶7 (wherein trial court *granted* defendant's motions and allowed him to withdraw his *Alford* plea and replace the appointed counsel who had advised him to accept the plea offer of concurrent three-year sentences. New counsel was appointed, the case went to trial, and the defendant received an aggregate sentence of life in prison.)

**{¶37}** We also do not find any evidence that Schmidt suffered prejudice as a result of counsel's advice or as a result of the trial court's refusal to allow counsel to withdraw. The record shows that Schmidt's attorney argued strongly in favor of granting the motion to withdraw the guilty plea and allowed Schmidt ample opportunity to testify. In addition to asking many specific questions which

permitted Schmidt to set forth his rationale for wanting to withdraw the plea, his attorney gave Schmidt an open-ended opportunity to explain his reasoning when he concluded by asking, "Is there anything else you want to tell the court?"

{¶38} There is no evidence that Schmidt's attorneys' performance was deficient or unreasonable, or that Schmidt suffered any prejudice as a result of the trial court's denial of his request for new counsel. Schmidt's third assignment of error is overruled.

{¶39} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**