[Cite as *State v. Carey*, 2011-Ohio-1998.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,             CASE NO.  14-10-25

    v.

SHONTA CAREY,                    O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Union County Common Pleas Court
Trial Court No. 09-CR-0087

**Judgment Affirmed**

Date of Decision:  April 25, 2011

APPEARANCES:

    *Alison Boggs*  for Appellant

    *Terry L. Hord*  for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-Appellant, Shonta R. Carey ("Carey"), appeals the judgment of the Union County Court of Common Pleas finding her guilty and sentencing her to prison after Carey entered a plea of guilty to fifty-four counts of various theft-related offenses. On appeal, Carey contends that the trial court erred in accepting her guilty plea and that it should have conducted a heightened *Alford* inquiry because she had maintained her innocence. For the reasons set forth below, the judgment is affirmed.

{¶2} On June 18, 2009, the Union County[1] Grand Jury indicted Carey on seventy-two counts of theft-related offenses that occurred in the latter part of 2008. Carey entered a plea of "not guilty" and the matter was set for trial for July 20, 2010. Eighteen counts were dismissed prior to the trial date, leaving fifty-four counts remaining in the indictment consisting of: twenty-five counts of theft, sixteen counts of receiving stolen property, one count of grand theft, one count of petty theft, eight counts of identity fraud, two counts of forgery, and one count of engaging in a pattern of corrupt activity ("RICO charge").[2] Carey, along with two accomplices, was apprehended after stealing purses, jewelry, credit cards, checkbooks, car keys and other valuables, and then making purchases utilizing the victims' credit cards and checks. Over a period of time, the three women would

---

[1] The offenses occurred in Union, Franklin, Hamilton, Champaign, Butler, Licking, Muskingham, Pickaway, and Montgomery counties, but they were all indicted and set for trial in Union County.

[2] On the morning of Carey's plea, pursuant to the agreement, four counts in the indictment were further amended, reducing two of the counts from felonies of the fourth degree to felonies of the fifth degree, and changing two of the counts from theft of an elderly person to simply theft.

go into women's locker rooms at various YMCAs and fitness facilities and take the women's purses from their lockers. Or, they would take their car keys, find the vehicle in the parking lot, and then take purses and other valuables that had been left locked in the car. Carey's two accomplices had previously entered guilty pleas pursuant to negotiated plea agreements. On the day of the trial, the attorneys gave opening statements to all of the potential jurors; they conducted voir dire; and a jury panel was selected. At shortly before 2:00 p.m., just as the trial was ready to begin, Carey informed the trial court that she wished to change her plea.[3] The trial court was presented with a third amended sentencing recommendation that was signed by all the parties. The "Entry Withdrawing Plea of Not Guilty, Entering Plea of Guilty and Referral for Presentence Investigation" was thirty pages long and contained a sentencing recommendation of ten years.

{¶3} Carey was then sworn in and the trial court conducted a full and detailed Crim.R. 11 plea colloquy. The trial court informed Carey that she could potentially be facing a maximum sentence of over sixty-four years in prison and a maximum fine of $172,000. The trial court repeatedly asked Carey if she wanted to enter a guilty plea to all of the charges and reminded her that she had a right to have a jury trial and that everyone was ready to proceed with the trial if that was her choice. The State also gave a statement of facts giving the details of each of the fifty-four counts in the indictment. The trial court then accepted Carey's guilty

[3] The record shows that Carey had indicated early in the morning that she might want to change her plea. The trial court elected to proceed with selecting the jury first. After the jury was selected, although not sworn and seated, the court was informed that Carey was ready to enter a guilty plea.

pleas, found her guilty of all of the charges, ordered a presentence investigation, and set the sentencing hearing for August 20, 2010.

{¶4} At the sentencing hearing, the trial court followed the recommendations pursuant to the plea agreement and sentenced Carey to a total of ten years in prison. She was also ordered to pay costs and was jointly and severally responsible for paying $32,604.31 in restitution to the victims. The trial court noted that she could be eligible for judicial release. It is from this judgment that Carey now appeals, raising the following two assignments of error.

**First Assignment of Error**
**The trial court erred when it accepted [Carey's] guilty plea when [Carey] told the court she was not guilty, in effect, rendering her plea not knowing, intelligent or voluntary.**

**Second Assignment of Error**
**The trial court erred when it failed to perform a proper *Alford* inquiry after the court was informed by [Carey] that she was pleading guilty even though she did not commit the crime, thereby rendering her plea not knowing, intelligent or voluntary.**

{¶5} In her first assignment of error, Carey maintains that the trial court erred when it accepted her guilty plea after she told the court "I'm going to plead to it, but I didn't – I didn't commit those acts. But I'm going to plea. Yes. I admit." (Tr. 7/20/10, pp. 116-17.) Carey now asserts that her "protestations of innocence" meant that her plea was actually an "*Alford* plea." Therefore, Carey contends that the trial court erred when it accepted her plea without conducting an enhanced inquiry in order to determine that her plea was voluntarily and intelligently made.

-4-

{¶6} An "*Alford* plea" is a specialized type of guilty plea when the defendant, although pleading guilty, continues to deny his or her guilt but enters the guilty plea because the defendant believes that the offered sentence is better than what the outcome of a trial is likely to be. *State v. Schmidt*, 3d Dist. No. 10-10-04, 2010-Ohio-4809, ¶13. See, also, *State v. Piacella* (1971), 27 Ohio St.2d 92, 271 N.E.2d 852. The term "*Alford* plea" originated with the United States Supreme Court's decision in *North Carolina v. Alford* (1971), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, wherein the Supreme Court held that guilty pleas linked with claims of innocence may be accepted provided the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." Id., 400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171. Although an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as a guilty plea. *State v. Vogelsong*, 3d Dist. No. 5-06-60, 2007-Ohio-4935, ¶15.

{¶7} All pleas, including an *Alford* plea, must meet the general requirement that the defendant knowingly, voluntarily, and intelligently waived his or her right to trial. See, e.g., *State v. Padgett* (1990), 67 Ohio App.3d 332, 337-38, 586 N.E.2d 1194, construing Crim.R. 11(C). Because pleas accompanied by protestations of innocence give rise to an inherent suspicion that a knowing, voluntary, and intelligent waiver may not have occurred, an *Alford* plea places a heightened duty upon the trial court to ensure that the defendant's rights are

protected and that entering the plea is a rational decision on the part of the defendant. *Id.*

**{¶8}** Although Carey now claims that she entered an "*Alford* plea," the record does not support that assertion. Carey made one, tenuous denial as to her participation in the events but, thereafter, she fully acknowledged her guilt. Neither Carey nor her attorney ever represented her plea to be an *Alford* plea – not during the plea negotiations, not at the change of plea hearing, nor in her lengthy written plea agreement. See *State v. Pate*, 3d Dist. No. 5-96-12, 1996 WL 689196 (finding that the requirements of an *Alford* plea were not met; "there was never any oral or written notice that such a plea was being attempted.") The State was never informed that Carey was intending to enter an *Alford* plea, nor did it agree to condition the plea bargain upon such a qualified plea. Furthermore, Carey signed and initialed a detailed, thirty-page plea document acknowledging that she understood all of the charges to which she was pleading guilty; that she was satisfied with her lawyer's advice and counsel; and that "I understand that my plea of guilty is a complete admission of my guilt to the charges ***." Carey's one comment, wherein she failed to take full responsibility for her participation in the offenses, was not sufficient to characterize her plea as an *Alford* plea.

**{¶9}** Furthermore, after Carey's single denial of guilt, she immediately retracted that claim, reversed her position, and acknowledged her guilt throughout the rest of the proceedings, and thereafter at her sentencing hearing. "Where the

defendant interjects protestations of innocence into the plea proceedings, *and fails to recant those protestations of innocence,* the trial court must determine that the defendant has made a rational calculation to plead guilty notwithstanding his belief that he is innocent." (Emphasis added.) *State v. Padgett*, 67 Ohio App.3d at 338-339, 586 N.E.2d at 1198. However, in this case, Carey *did* "recant" her denial of guilt and completely pled guilty to everything thereafter.

**Carey:** **\*\*\* Yes. I admit.**

**The Court: You admit that you –**

**Carey: Yeah.**

**The Court: You understand that you have a right to a jury trial if you want to go forward.**

**Carey: No, I'm here.**

**The Court: So once again, do you admit that you committed the acts as alleged in the statement of facts?**

**Carey: Yes.**

(Tr., p. 117.) Carey's statements did not contain any qualification wherein she stated that she did not commit the acts, but was going to plead guilty anyway. Carey unequivocally admitted to committing the offenses.

{¶10} The trial court then posed ten more questions to Carey, asking her specifically "how do you plead?" as to each group of like-counts in the indictment (and specifically enumerating the number of each count, the revised code number, and the degree of the felony or misdemeanor). Carey responded, "Guilty," ten

times. The trial court then asked, "Do you understand that what you've just done is you've plead guilty to 24 fifth degree felony theft offenses, do you understand that?" The trial court repeated the question for each of the ten groups of offenses, and Carey answered in the affirmative ten separate times. Following this, the trial court asked:

> **The Court: Do you wish to stand on your plea of guilty to all of these offenses?**
>
> **Carey: Yes.**

(Tr. at p. 121.) The trial court then summarized her plea to all of the counts, accepted her plea of guilty, and found her guilty of all of the offenses.

{¶11} Furthermore, at the sentencing hearing, when Carey began to equivocate as to her complicity in *all* the offenses,[4] the trial court immediately inquired, "You did the ones you plead guilty to, right?" Carey again acknowledged that she did. (Sentencing Hearing Tr., p. 6.)

{¶12} Finally, the record demonstrates that the trial court was not willing to accept Carey's change of plea if Carey had maintained her innocence. A criminal defendant does not have an absolute right under the United States Constitution to have his or her guilty plea accepted by the court. *North Carolina v. Alford*, 400 U.S. at 38, 91 S.Ct. 160, 27 L.Ed.2d 162, n. 11. "In *Alford*, the court did not

---

[4] It would appear that she wanted the court be aware that she was not guilty of *all* of the approximately eighty counts that her two accomplices pled guilty to; she only acknowledged participation in the approximately fifty counts in her indictment. (Apparently Carey was in custody on another matter during the time when some of the other offenses were committed.) Carey wanted the court to take into consideration that her accomplices were sentenced to six years in prison for more counts, while her plea agreement called for ten years in prison for fewer counts.

determine that adult offenders have a constitutional right to enter a guilty plea and simultaneously maintain innocence; rather the opinion merely states that courts *may*, in certain circumstances, accept guilty pleas of defendants who maintain their innocence." (Emphasis sic.) *In re Kirby*, 101 Ohio St.3d 312, 2004-Ohio-970, 804 N.E.2d 476, ¶13. The holding in *Alford* "does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead." Id. at ¶17, quoting *Alford*, 400 U.S. at 38, 91 S.Ct. 160, 27 L.Ed.2d 162, n. 11.

{¶13} The trial court was more than willing to go forward with the trial if Carey had wished to maintain that she was innocent. Immediately after Carey denied committing the acts, the trial court informed her that, "You understand that you have a right to a jury trial if you want to go forward." (Tr. at p. 117.) The jury had been selected, the witnesses were waiting, and the attorneys were prepared to go forward. Carey responded, "No, I'm here." (Id.)

{¶14} The dialogue between the trial court and Carey indicated the trial court was committed to ensuring that Carey's rights were protected, that she understood what all of her options were, and that her decision to change her plea was made knowingly, intelligently, and voluntarily. After accepting Carey's change of plea, the trial court called the jury back into the courtroom and told them what had occurred. The trial court further explained to the jury that:

**it's the court's obligation then to make sure that when the defendant enters a plea of guilty, that she knows what she's doing and what she's entering a plea of guilty to. \*\*\***

*And certainly we don't want anybody ever pleading guilty to an offense that they feel that they're not guilty of.* **And so everybody has a right to, under our system of justice, to a jury trial.**

(Emphasis added.)  (Tr., pp. 124, 128.)

{¶15} If Carey truly wished to maintain her claim of innocence, she was clearly and repeatedly informed that she would then have the right to go to trial. Based on the above, Carey's plea was not an *Alford* plea.  Carey's first assignment of error is overruled.

{¶16} In her second assignment of error, Carey alleges that the trial court erred by not conducting an "*Alford* inquiry" once Carey had supposedly asserted her innocence.  Carey maintains that the trial court did not comply with the requirements set forth in *Piacella*, supra, or any of the other aspects of a heightened *Alford* inquiry.  See, e.g., *Padgett*, 67 Ohio App.3d at 337-38; *Schmidt*, 2010-Ohio-4809, at ¶15.

{¶17} Based upon our finding in the first assignment of error, that Carey's guilty plea was not an *Alford* plea, this assignment of error is moot.  Given that there was no notice of any intention to enter an *Alford* plea trial, coupled with Carey's repeated, unqualified admissions that she had done the acts along with her pleas of "guilty," the trial court was not obligated to conduct any kind of an *Alford* inquiry.

-10-

{¶18} For all of the above reasons, Carey's second assignment of error is also overruled.  Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**