[Cite as *State v. Chapple*, 2024-Ohio-2275.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 23AP-404 |
| | | (C.P.C. No. 20CR-3865) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jeffrey L. Chapple, Jr., | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 13, 2024

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Taylor M. Mick*, for appellee.

**On brief:** *Bellinger & Donahue*, and *Kerry M. Donahue*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Jeffrey L. Chapple, Jr., appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to an *Alford* plea, of felonious assault and having weapons while under disability. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed August 20, 2020, plaintiff-appellee, State of Ohio, charged Chapple with seven counts of felonious assault, in violation of R.C. 2903.11, all second-degree felonies; one count of escape, in violation of R.C. 2921.34, a fourth-degree felony; and one count of having weapons while under disability, in violation of R.C. 2923.13, a third-degree felony. The felonious assault counts each contained an accompanying

firearm specification, pursuant to R.C. 2941.145(D), and repeat violent offender specification pursuant to R.C. 2941.149(A). Additionally, the having weapons while under disability count contained an accompanying firearm specification pursuant to R.C. 2941.145(D). Chapple initially entered a plea of not guilty.

{¶ 3} On May 15, 2023, the parties appeared at a hearing in which the state presented a formal plea offer. At the outset of the hearing, Chapple indicated he would not accept the plea agreement and wanted to proceed to trial. The trial court discussed the offer with Chapple at length, asking Chapple specifically whether he understood every charge in the indictment and the possible sentences. The trial court informed Chapple that if he was convicted of every charge in the indictment, he faced a maximum possible sentence of more than 100 years in prison. Chapple indicated he understood the charges and potential sentences. The trial court then explained the plea offer from the state, which would be a guilty plea to one count of felonious assault with a firearm specification with a recommended sentence of 12 years as the minimum duration of an indefinite sentence. After discussing the possible outcomes of accepting the plea or going to trial, the trial court ordered a continuance for Chapple to consider the matter more thoroughly with his counsel.

{¶ 4} The parties then appeared before the trial court again on June 5, 2023 for a change of plea hearing. Under the terms of the plea agreement, Chapple agreed to enter a plea pursuant to *N. Carolina v. Alford*, 400 U.S. 25 (1970), to one count of felonious assault with a three-year firearm specification and one count of having weapons under disability with a one-year firearm specification. The state agreed to dismiss all remaining counts and specifications in the indictment in exchange for Chapple's plea. Further, the parties jointly recommended the following sentence:

> Count 1 – The Reagan Tokes Act regarding indefinite sentencing applies to this case. There is a joint recommendation for a definite sentence of 8 years ODRC with a maximum indefinite sentence of 12 years ODRC. There is also a mandatory 3 year firearm specification. The definite sentence is 11 years ODRC with a maximum indefinite sentence of 15 years ODRC.

> Count 9 – 36 months ODRC with a mandatory one year firearm specification for a total of 4 years ODRC. Count 9 to run consecutive to count 1.

(Entry of Alford Plea at 1.)

{¶ 5} The trial court then conducted a full Crim.R. 11 plea colloquy, with Chapple indicating he understood the plea agreement, he was satisfied with his counsel, he was not coerced or forced into entering the plea, he understood that, through an *Alford* plea, he was not admitting guilt but accepted that the court would treat him as if he were guilty of the charges, and that he was entering the plea to avoid the possible consequences of going to trial. Additionally, Chapple stated he understood the possible sentences and the joint recommendation for the sentence. The trial court explained all the rights Chapple was giving up by entering a plea rather than going to trial, and Chapple stated he understood all of those rights and that it was his decision to enter an *Alford* plea. Counsel for Chapple stated he was satisfied Chapple understood his rights and was giving up those rights freely and voluntarily by entering the *Alford* plea.

{¶ 6} For purposes of the *Alford* plea, the state entered the following facts into the record: On February 12, 2020, Chapple approached Michael Pryor and fired multiple gunshots in his direction, striking Pryor once in the face. Pryor's wife, Lachelle Higgins, a concealed carry permit holder, was present at the scene in another vehicle and returned fire toward Chapple. At that time, Chapple then fired gunshots in the direction of Higgins, striking her vehicle. One of Higgins' gunshots hit Chapple in his left foot. When officers arrived, they transported Pryor to the hospital in critical condition. Higgins identified Chapple to police as a known individual and subsequently identified him in a photo array. The trial court found there was sufficient evidence to sustain a conviction of the offenses contained in the plea agreement if the matter was to go to trial.

{¶ 7} Following the discussion, Chapple entered a plea of "[g]uilty pursuant to *Alford* plea" on both counts and their accompanying firearm specifications. (June 5, 2023 Tr. at 27.) The trial court specifically found Chapple "was informed of all constitutional rights and has made a knowing, intelligent, and voluntary waiver of those rights." (June 5, 2023 Tr. at 28.) The court further found Chapple understood "the nature of * * * each charge, the effect of the plea, as well as the maximum penalties that can be imposed" and

that there was "sufficient evidence to sustain [a] conviction of the offenses as articulated by the State." (June 5, 2023 Tr. at 28.) Thus, the trial court accepted Chapple's *Alford* plea and found him guilty of both offenses and their accompanying specifications.

{¶ 8} The parties waived a presentence report, and the matter proceeded to sentencing that same day. Counsel for Chapple asked the trial court to "go along with the joint recommendation and sentence [Chapple] accordingly." (June 5, 2023 Tr. at 30.) The state similarly asked the trial court to follow the joint recommendation. Subsequently, the trial court accepted and imposed the joint recommendation and sentenced Chapple to an aggregate sentence of a minimum of 15 years and a maximum indefinite term of 19 years in prison. In a June 8, 2023 judgment entry, the trial court journalized Chapple's convictions and sentence. Chapple timely appeals.

## II. Assignment of Error

{¶ 9} Chapple assigns the following sole assignment of error for our review:

> The *Alford* Plea was not knowingly and voluntarily entered into, for lack of specific compliance, and/or findings necessary to impose consecutive sentences were not specifically/properly made.

## III. Discussion

{¶ 10} In his sole assignment of error, Chapple argues his *Alford* plea was not made knowingly and voluntarily. Through this assignment of error, Chapple advances two separate arguments. First, he asserts his plea was not made knowingly and voluntarily because the trial court failed to strictly comply with Crim.R. 11(C)(2)(c). Second, Chapple alleges his sentence is contrary to law because the trial court failed to make the requisite findings under R.C. 2929.14(C)(4) before imposing consecutive sentences. We address each of these arguments in turn.

## A. Plea Entered Knowingly, Intelligently, and Voluntarily

{¶ 11} Chapple first argues his plea was not entered knowingly and voluntarily. Crim.R. 11(C) requires a trial court to inform a felony defendant of certain constitutional and non-constitutional rights before it may accept a plea. Thus, the trial court must engage in a Crim.R. 11(C) colloquy with a defendant to ensure that the defendant's plea is knowing, voluntary, and intelligent. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25-26.

{¶ 12} Pursuant to Crim.R. 11(C)(2)(c), the trial court must notify the defendant of his constitutional rights against self-incrimination, to a jury trial, to confront one's accusers, to compel witnesses to testify by compulsory process, and to have the state prove guilt beyond a reasonable doubt. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 19-21. A trial court is required to " 'strictly comply with the dictates of Crim.R. 11(C)' " in notifying a defendant of his constitutional rights. *State v. Pyfrom*, 10th Dist. No. 16AP-590, 2017-Ohio-5599, ¶ 9, quoting *State v. Gonzales*, 6th Dist. No. WD-06-084, 2007-Ohio-3565, ¶ 16. However, a trial court " 'need not use the exact language found in that rule when informing a defendant of his constitutional rights,' " but " 'must explain those rights in a manner reasonably intelligent to the defendant.' " *Id.*, quoting *Gonzales* at ¶ 16.

{¶ 13} With respect to non-constitutional rights, the trial court must inform the defendant of the effect of his plea, the nature of the charges, and the maximum penalty, including an advisement on post-release control if applicable. Additionally, the trial court must inform the defendant, if applicable, that he is not eligible for probation or the imposition of community control sanctions. Finally, the trial court must notify the defendant that the court may proceed to judgment and sentence after accepting the guilty plea. Crim.R. 11(C)(2)(a) and (b); *Veney* at ¶ 10-13. In notifying a defendant of his non-constitutional rights, " 'scrupulous adherence to Crim.R. 11(C) is not required; the trial court must substantially comply, provided no prejudicial effect occurs before a guilty plea is accepted.' " *Pyfrom* at ¶ 9, quoting *Gonzales* at ¶ 17. " 'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implication of his plea and the rights he is waiving.' " *Id.*, quoting *Gonzales* at ¶ 17.

{¶ 14} Where a defendant enters an *Alford* plea, the trial court has a "heightened duty" to ensure the defendant's rights are protected and that the defendant is making a rational decision in entering the plea. (Internal quotations omitted.) *State v. Fetherolf*, 10th Dist. No. 19AP-129, 2019-Ohio-4176, ¶ 9, quoting *State v. Carey*, 3d Dist. No. 14-10-25, 2011-Ohio-1998, ¶ 7. An *Alford* plea allows a trial court to enter a guilty plea linked to a claim of innocence provided the "defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *Alford*, 400 U.S. at 37. While an *Alford* plea allows a defendant to maintain his factual innocence, the plea has the same legal effect as a plea of guilty. *Fetherolf* at ¶ 9,

citing *Carey* at ¶ 6. In accepting an *Alford* plea, the trial court need not directly inquire whether the defendant has made a rational calculation to plead guilty; instead, the trial court may accept the *Alford* plea so long as there is sufficient information before the trial court to determine the defendant's decision to plead guilty notwithstanding his assertion of actual innocence was a rational decision. *Fetherolf* at ¶ 10, citing *State v. Lacumsky*, 6th Dist. No. OT-08-060, 2009-Ohio-3214, ¶ 9, and *State v. Kirigiti*, 10th Dist. No. 06AP-612, 2007-Ohio-6852, ¶ 15.

{¶ 15} Here, although Chapple argues the trial court failed to strictly comply with Crim.R. 11(C)(2)(c), he does not identify any specific constitutional right of which the trial court did not properly advise him. As outlined above, the trial court conducted an extensive plea hearing. The trial court first satisfied its heightened duty to ensure Chapple's decision to enter an *Alford* plea was a rational decision. The trial court then extensively reviewed the plea form Chapple had signed listing the rights Chapple was waiving by entering the plea, and Chapple indicated he had no questions about the plea form. Before accepting Chapple's *Alford* plea, the trial court conducted a thorough Crim.R. 11(C) colloquy, specifically covering each of the constitutional rights contained in Crim.R. 11(C)(2)(c), and Chapple again indicated he understood he was waiving each of those rights. Additionally, the trial court expressly determined there was strong evidence of actual guilt before entering Chapple's *Alford* plea. Based on the extensive and thorough plea hearing and Chapple's responses during the hearing, we conclude the trial court strictly complied with Crim.R. 11(C)(2)(c). Thus, the trial court did not err in finding Chapple's *Alford* plea was knowing, intelligent, and voluntary.

## B. Consecutive Sentences

{¶ 16} Additionally, under his sole assignment of error, Chapple argues the trial court erred in imposing consecutive sentences. An appellate court will not reverse a trial court's sentencing decision unless the evidence is clear and convincing that either the record does not support the sentence or that the sentence is contrary to law. *State v. Chandler*, 10th Dist. No. 04AP-895, 2005-Ohio-1961, ¶ 10, citing *State v. Maxwell*, 10th Dist. No. 02AP-1271, 2004-Ohio-5660, ¶ 27, citing *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, ¶ 10. *See also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1 ("an appellate court may vacate or modify a felony sentence on appeal only if it determines

by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law"). "In determining whether a sentence is contrary to law, an appellate court must review the record to determine whether the trial court considered the appropriate statutory factors, made the required findings, gave the reasons for its findings, and properly applied the statutory guidelines." *Maxwell* at ¶ 27, citing *State v. Altalla*, 10th Dist. No. 03AP-1127, 2004-Ohio-4226, ¶ 7.

{¶ 17} Pursuant to R.C. 2929.14(C)(4), the trial court may exercise its discretion to impose consecutive sentences for multiple prison terms. *State v. Guy*, 10th Dist. No. 17AP-322, 2018-Ohio-4836, ¶ 56, citing *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, ¶ 16. Before imposing consecutive sentences, a court must make certain findings. R.C. 2929.14(C) provides:

> (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 18} Thus, pursuant to R.C. 2929.14(C)(4), in order to impose consecutive terms of imprisonment, a trial court is required to make at least three distinct findings: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the subsections (a), (b), or (c) applies. *State v. Price*, 10th Dist. No. 13AP-1088, 2014-Ohio-4696, ¶ 31, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177.

{¶ 19} Ordinarily, a trial court seeking to impose consecutive sentences must make the findings required by R.C. 2929.14(C)(4) at the sentencing hearing and also incorporate such findings into its sentencing entry. *Bonnell* at ¶ 37. Despite Chapple's argument to the contrary, the trial court did make the specific findings for consecutive sentences under R.C. 2929.14(C)(4) when it accepted and imposed the jointly recommended sentence and subsequently incorporated those findings into the judgment entry. Even if the trial court had not made the R.C. 2929.14(C)(4) findings, however, we are mindful that where a sentence is imposed pursuant to a joint sentencing recommendation and the sentence is "authorized by law," then, pursuant to R.C. 2953.08(D)(1), the sentence is not subject to appellate review. *Sergent* at ¶ 15.

{¶ 20} Here, Chapple's sentence was imposed pursuant to a jointly recommended sentence, with both Chapple and the state specifically requesting at the sentencing hearing the trial court follow the joint recommendation. The joint recommendation explicitly stated the sentences for the two counts were to run consecutively. As the Supreme Court of Ohio has held, "in the context of a jointly recommended sentence that includes nonmandatory consecutive sentences, a trial court is not required to make the consecutive-sentence findings set out in R.C. 2929.14(C)(4)," and "when a trial judge imposes such an agreed sentence without making those findings, the sentence is nevertheless 'authorized by law' and not reviewable on appeal pursuant to R.C. 2953.08(D)(1)." *Sergent* at ¶ 43. Chapple does not assert that his sentence was not within the permissible statutory range, nor does he dispute that the sentence was imposed subject to a joint recommendation. Thus, Chapple's consecutive sentences were "authorized by law" and are not subject to appellate review. R.C. 2953.08(D)(1).

{¶ 21} Additionally, to the extent Chapple argues the imposition of consecutive sentences rendered his plea something other than knowing, intelligent, and voluntary, "Crim.R. 11 applies only to the entry and acceptance of the plea" but "has no relevance to the exercise of the trial court's sentencing discretion at that stage." *State v. Johnson*, 40 Ohio St.3d 130, 134 (1988). Thus, the imposition of the jointly recommended sentence did not operate to render his *Alford* plea violative of Crim.R. 11.

{¶ 22} For these reasons, we overrule Chapple's sole assignment of error.

## IV. Disposition

{¶ 23} Based on the foregoing reasons, the trial court did not err in accepting Chapple's *Alford* plea as knowingly, voluntarily, and intelligently made, and the trial court's imposition of the jointly recommended sentence was authorized by law and not subject to appellate review pursuant to R.C. 2953.08(D)(1). Having overruled Chapple's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL, P.J., and BOGGS, J., concur.

_____